UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA ELIZABETH GIBBS,<br><br>           Plaintiff,<br><br>      v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>           Defendant. | Case No.  1:21-cv-00503-KES-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANT DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND AFFIRM THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY [2]<br><br>(Doc. Nos.  24, 29)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

Serena Elizabeth Gibbs ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. No. 1).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 24, 29).  For the reasons stated, the undersigned RECOMMENDS denying Plaintiff's motion for summary judgment, granting the Commissioner's cross-motion for summary

---

[1] The Court has substituted Martin O'Malley, who has since been appointed the Acting Commissioner of Social Security, as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d).

[2] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

judgment, and affirming the Commissioner's decision.

## I. JURISDICTION

Plaintiff filed for supplemental security income on January 10, 2018, alleging a disability onset date of March 8, 2017. (AR 320-25). At the hearing, she amended the alleged onset date to January 10, 2018. (AR 44-45). Benefits were denied initially (AR 176-192, 214-19), and upon reconsideration (AR 193-209, 223-28). A hearing was conducted before an Administrative Law Judge ("ALJ") on October 17, 2019. (AR 40-61). Plaintiff was represented by counsel and testified at the hearing. (*Id*.). On November 8, 2019, the ALJ issued an unfavorable decision (AR 19-39) and on July 2, 2020, the Appeals Council denied review. (AR 6-11). The matter is before the Court under 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 37 years old at the time of the hearing. (AR 47). She completed tenth grade. (AR 45). She lives with her two children, and she is their primary caretaker. (AR 48-49). Plaintiff has no qualifying past relevant work. (AR 33). Plaintiff testified that he cannot work because her back and hands "give out," she drops things because her hands are weak, and she cannot stand for too long because her legs get numb. (AR 48). She reported she can do a household task for 10-15 minutes before she needs to take a break for an hour and a half, she lays down in her room for half of every day, she can use her hands for 5 minutes before she has to rest them for 1-2 hours, and she can have social interaction for about one hour per day. (AR 50, 52-53, 55). She has headaches four times a week that last from two to four days and she has to stay in bed all day. (AR 53-54). Plaintiff testified that her mental impairments prevent her from working more than her physical impairments. (AR 55).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the

2

Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV.   SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the

claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 10, 2018, the application date. (AR 25). At step two, the ALJ found that Plaintiff has the following severe combination of impairments: fibromyalgia, migraines, obesity, depression, anxiety, and post-traumatic stress disorder. (AR 25). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 26). The ALJ then found that Plaintiff has the RFC:

> to perform a light work as defined in 20 CFR 416.967(b) with the following exceptions. The claimant can never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous work environments. The claimant can occasionally climb stairs or ramps and frequently stoop, crouch, kneel, or crawl. She can frequently engage in tasks that require fingering and handling. She must avoid concentrated exposure to noise above a moderate level as defined by Appendix D of the Selected Characteristics of Occupations or concentrated exposure to bright flashing or flickering lights. She is limited to remembering and carrying out simple, routine tasks. She can have occasional contact with supervisors and brief, incidental contact with coworkers and the general public. She is limited to making simple work-related decisions and cannot perform production pace tasks that require strict hourly goals. She will be off-task five percent of the workday.

(AR 28). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 33). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform,

including apparel stock checker, mail clerk, and garment sorter. (AR 34). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since January 10, 2018, the date the application was filed. (AR 35).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims regarding her fibromyalgia; and
2. Whether the ALJ erred at step five.

(Doc. No. 24 at 8-15).

## VII. DISCUSSION

**A. Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. (AR 29). First, the ALJ found Plaintiff's "stable and conservative treatment pattern does not suggest limitation beyond that set forth in the [RFC]." (AR 31). The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Moreover, evidence of "conservative treatment" may be sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed).

Plaintiff argues the ALJ's finding that her treatment was conservative is not supported by substantial evidence, as "typical treatment for fibromyalgia consists of medications, exercise, and therapy." (Doc. No. 24 at 14 (citing *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (noting "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated," and finding the ALJ failed to explain why he deemed epidural injections, steroid injections, and prescribed pain medications to be "conservative" treatment for fibromyalgia)). Here, Plaintiff was prescribed multiple medications for pain and mental health complaints. (AR 463-80, 506-17). However, even assuming, arguendo, that the ALJ failed to

properly explain how Plaintiff's treatment for fibromyalgia was conservative in nature, any error is harmless because the ALJ offers additional reasoning as to Plaintiff's "pattern of treatment," supported by substantial evidence, to discount Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155, 1162-63 (9th Cir. 2008) (error in considering one of several reasons given in support of ALJ's finding was harmless because the remaining reasons and ultimate determination were supported by substantial evidence). Specifically, the ALJ found that as of her amended onset date Plaintiff's "pain was generally controlled with medications, notably described as only a 2 on a scale of 10," and later in the record Plaintiff reported pain only 3-4 on a scale of 10 and that with her medications she could "keep up with teenage children, as well as care for her sister's two younger children." (AR 29, 463, 465, 507, 510, 513, 515-16). This favorable response to treatment for pain across the longitudinal record was a clear, convincing, and unchallenged reason for the ALJ to discount Plaintiff's symptom claims. *See Tommasetti*, 533 F.3d at 1040; *Macarthur v. Kijakazi*, 2023 WL 8519119, at *2 (9th Cir. Dec. 8, 2023) (finding the ALJ provided clear and convincing reasons to discount plaintiff's subjective testimony regarding her fibromyalgia and neuropathy including improvement with routine and conservative treatment).

Second, the ALJ found Plaintiff's "daily activities are inconsistent with debilitating conditions and allegations that she has been unable to work. In fact, the claimant's own admissions suggest that she is generally capable of engaging in a range of activities consistent with the limitations stated in the [RFC]." (AR 31). A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). In support of this finding, the ALJ cited evidence throughout the decision of Plaintiff's ability to perform a

range of activities, including walking regularly, independent self-care, preparing meals, cleaning, grocery shopping, driving her children to and from school and activities for a total of 90 minutes daily, and providing childcare assistance to family members. (AR 29, 31, 49-50, 348-50, 463, 516, 521).

Plaintiff argues the ALJ "misrepresents the record" because she needs help with "some" of her activities and actually testified that 90 minutes was the furthest she had driven in the last two years; and the ALJ failed to explain how Plaintiff's daily activities are inconsistent with her fibromyalgia symptoms. (Doc. No. 24 at 15). As an initial matter, a plain reading of Plaintiff's testimony indicates that she reported driving "an hour and a half *a day*. That's taking my kids to school, picking them up, whatever it may be." (AR 49 (also testifying that she is the primary caretaker of the children) (emphasis added)); *see Tommasetti*, 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence). Moreover, regardless of evidence that could be considered favorable to Plaintiff, it was reasonable for the ALJ to find that Plaintiff's documented activities, including her reports in the record that she takes care of both her own kids and her sister's children without assistance, was inconsistent with her allegations of entirely debilitating functional limitations. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (plaintiff's ability to care for young children without help may undermine claims of totally disabling pain); *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Third, the ALJ found Plaintiff's symptom claims are inconsistent with objective findings. (AR 29-30). Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857 (an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain is not supported by objective medical evidence). Plaintiff correctly notes that when considering fibromyalgia symptoms, the ALJ "will consider the longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" (Doc.

9

No. 24 at 13 (citing Social Security Ruling (SSR) 12-2p, *available at* 2012 WL 3104869, at *6)). However, as noted by Defendant, "just because fibromyalgia is a condition that often eludes objective measurement does not mean an ALJ must blindly accept the claimant's allegations of disabling pain." (Doc. No. 29 at 15 (citing SSR 12-2p, at *2 ("As with any claim for disability benefits, before we find that a person with an [medically determinable impairment] of [fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a findings that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity."))). Here, the ALJ detailed normal objective findings across the relevant adjudicatory period, in contradiction of Plaintiff's claims of entirely disabling limitations. For example, as to her diagnosis of fibromyalgia, the ALJ cited examination findings of no lumbar tenderness or muscle spasms, normal range of motion, normal cranial nerve examination, full motor strength in extremities, normal reflexes, normal coordination, and positive trigger points only in upper shoulders. (AR 29-30, 495-96, 510, 516).

Thus, when viewing the record as a whole, the ALJ explicitly recognized evidence in the record that could be considered more favorable to Plaintiff and nonetheless found the severity of her symptom claims regarding fibromyalgia were inconsistent with the weight of the objective medical evidence. (*See* AR 29-30). "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims. Moreover, even assuming the ALJ erred in considering the objective evidence as inconsistent with Plaintiff's symptom claims related to fibromyalgia, any error is harmless because, as discussed above, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence including inconsistency with her daily activities and a favorable response to treatment. *See Carmickle*, 533 F.3d at 1162-63.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

////

**B. Step Five**

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran*, 700 F.3d at 389. The Commissioner can meet this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). If the hypothetical does not reflect all the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

In addition, the occupational evidence provided by a vocational expert should be consistent with the Dictionary of Occupational Titles ("DOT"). *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). "The [DOT], a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides the analysis. If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listing in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)) (also finding ALJ need only resolve conflicts between expert testimony and the DOT that are obvious or apparent); *see also Martinez v. Colvin*, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) ("An example of a conflict between the DOT and a VE's testimony is when the DOT's description of a job includes activities a claimant is precluded from doing, and the VE nonetheless testifies the claimant would be able to perform that job."). The ALJ may rely on VE testimony that conflicts with the DOT as long as there is "persuasive testimony" to support the deviation. *Massachi*, 486

F.3d at 1153 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Here, the vocational expert ("VE") testified that a hypothetical individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the requirements of representative jobs such as apparel stock checker (DOT 299.667-014), mail clerk (DOT 209.687-026), and garment sorter (DOT 222.687-014). (AR 34, 57). Based on the VE testimony, the ALJ concluded at step five that "considering [Plaintiff's] age, education, work experience, and [RFC], [she] was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 35).

First, Plaintiff argues the ALJ failed to identify and resolve conflicts between the assessed RFC and the vocational expert testimony regarding the identified occupations of apparel stock checker and mail clerk. (Doc. No. 24 at 8-10). As an initial matter, Defendant concedes that there is a conflict between the assessed RFC limiting Plaintiff to remembering and carrying out simple, routine tasks, and the mail clerk position "because, according to the DOT, it requires a reasoning level of 3. In *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015), the Ninth Circuit found 'there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 reasoning.'" (Doc. No. 29 at 9-10). As to the apparel stock checker job, Plaintiff argues DOT requirements conflict with the assessed RFC limiting Plaintiff to brief, incidental contact with coworkers and the general public. (Doc. No. 24 at 9). In support of this argument, Plaintiff contends that this occupation "requires dealing with customers, including cleaning up after them and counting their garments as they enter and exit dressing rooms." (*Id.*). This argument is unavailing.

As argued by Defendant, there is no obvious or apparent conflict between the DOT description of apparel stock checker and the VE's testimony. "Nowhere does the DOT state that every apparel stock checker job requires more than brief, incidental contact with the general public, as Plaintiff seems to suggest." (Doc. No. 29 at 10). Rather, the DOT description provides that an apparel stock checker "[g]athers and counts garments tried on by customers in fitting rooms of retail store: Hangs garments according to size on display racks, and refastens belts, buttons, and zippers on garments tried on by customers. Counts number of garments carried in

and out of dressing rooms to assure no garments are missing. May sew on missing and loose buttons, hooks, loops." DOT 299.667-014, *available at* 1991 WL 672642. Moreover, despite Plaintiff's argument that the job is assigned a "Worker Function of 6, Speaking-Signaling," the DOT further describes this requirement as "not significant." (Doc. No. 24 at 9); DOT 299.667-014; *see also Lester v. Astrue*, 2011 WL 6013842, at *9 (D. Or. Dec. 2, 2011) (noting the DOT describes personal interaction for apparel stock checker job as not significant "and its narrative of job duties does not specify any direct contact with customers"). Based on the foregoing, the ALJ properly relied on the VE testimony at step five.

Second, Plaintiff argues the ALJ failed to satisfy his burden at step five because the occupation of "garment sorter," identified by the VE at 20,000 jobs in the national economy, does not exist in significant numbers in the national economy. (Doc. No. 24 at 10-11). The Court finds it unnecessary to consider this issue because, as discussed in detail supra, even without considering the mail clerk job, the ALJ's finding at step five that work existed in significant numbers in the national economy was supported by VE testimony that a hypothetical person of Plaintiff's age, education, work experience, and RFC could perform the requirements of garment sorter, with 20,000 jobs in the national economy, and apparel stock checker, with 30,000 jobs in the national economy. (AR 34, 57); *Buck v. Berryhill*, 869 F.3d 1040, 1051 & n.2 (9th Cir. 2017) (error may be harmless if VE has identified other jobs that claimant could do an there are a significant number of these jobs in the national economy); *Hernandez v. Berryhill*, 707 F. App'x 456, 458-59 (9th Cir. 2017) (finding any error at step five in considering two jobs was harmless because ALJ properly determined Plaintiff could perform one job identified by the VE that existed in significant numbers in the national economy).

The number of jobs available in the national economy can be calculated by aggregating the numbers for multiple occupations. 20 C.F.R. §§ 404.1566, 416.966. The Ninth Circuit has not established a "bright-line rule for what constitutes a 'significant number' of jobs." *Beltran*, 700 F.3d at 389. The Ninth Circuit has held the availability of 25,000 national jobs presents a "close call," but still constitutes a significant number of jobs, *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014), but the availability of 1,680 national jobs does not constitute a

13

significant number of jobs. *Beltran*, 700 F.3d at 390-91. Thus, the 50,000 aggregate jobs of garment sorter and apparel stock checker identified by the VE at the hearing meets the legal threshold for a significant number of jobs within the national economy. The ALJ properly relied on the VE's testimony, and the Court finds no error at step five.

### VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered Plaintiff's symptom claims regarding fibromyalgia, and the ALJ did not err at step five. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 24) be DENIED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 29) be GRANTED.
3. The district court AFFIRM the decision of the Commissioner of Social Security for the reasons set forth above.
4. The district court direct the Clerk to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

////
////
////

### NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id*.; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." The assigned District Judge will review these Findings and Recommendations under 28 U.S.C. § 636(b)(1)(C). A party's

failure to file objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:   March 21, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE